UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

BRUCE BOOTH,

    Petitioner,

vs.

BRIAN PATTON,

    Respondent.

Civil Action No. 08-02-HRW

**MEMORANDUM OPINION AND ORDER**

\*\*\*\*\* \*\*\*\*\* \*\*\*\*\* \*\*\*\*\*

Bruce Booth ("Booth"), an inmate incarcerated at the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland"), has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and has paid the $5 filing fee. [R. 2]

This matter is before the Court for screening. 28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, \*1 (6th Cir. 2002). As Booth is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But if the Court determines that the petition fails to establish adequate grounds for relief, it may dismiss the petition or make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

**I.   FACTUAL BACKGROUND**

In his petition, Booth indicates that on January 4, 2007, while incarcerated at the Federal Prison Camp in Atlanta, Georgia, his cell was searched by Bureau of Prisons ("BOP") staff who found

1

a cell phone in his bed. Booth was then taken to the Segregation Housing Unit ("SHU"). On January 5, 2007, a BOP officer handed Booth a written Incident Report charging him with two disciplinary infractions, "Possession of a Hazardous Tool" under Code 108 and "Possession of Any Thing Not Authorized" under Code 305. Although the Incident Report was delivered to Booth on January 5, 2007, a notation on the report incorrectly indicates that it was delivered on January 3, 2007, a day prior to the incident in question.

On January 19, 2007, a Disciplinary Hearing Officer ("DHO") held a hearing at which Booth admitted that he was guilty of the charges. The DHO found Booth guilty of both charges, and imposed various sanctions, which included the loss of 53 days of Good Conduct Time ("GCT"). Booth was thereafter transferred to the Federal Correctional Institution in Ashland, Kentucky.

On March 27, 2007, Booth filed a BP-230 with the Mid-Atlantic Regional Office ("MARO") of the BOP challenging his disciplinary convictions. In his grievance, Booth asked that the Incident Report be expunged because the delivery date stated in the Incident Report was incorrect. Booth also alleged that following the hearing the DHO told him that the sanctions imposed for each of the two charges would run concurrently with one another rather than consecutively, but that after his transfer to FCI-Ashland the paperwork did not properly reflect this and the sanctions were run consecutively instead. Finally, Booth sought relief from the sanctions as too harsh in relation to the alleged misconduct. On April 2, 2007, MARO Director K.M. White issued his response, in which he exercised his discretion to determine that:

> Upon review, it has been determined that based on the offense behavior, the most appropriate act is Possession of a Hazardous Tool (Code 108). Therefore, the finding that you committed the Code 305 has been expunged.

[R. 4-4]. MARO denied any further relief.

On July 16, 2007, Booth filed a BP-231 with the Central Office of Inmate Appeals. In his appeal, Booth reiterated his challenge to the Incident Report because of the incorrectly-stated delivery date in the Incident Report. Booth also asserted - for the first time - that the Code 108 conviction should be expunged because neither the Incident Report nor the DHO Report concluded that he was using the cell phone for the purpose of attempting escape, which Booth contended was the conduct prohibited by Code 108. On September 24, 2007, the Central Office denied his appeal.

Booth thereafter filed this matter, challenging his Code 108 conviction on procedural and substantive due process grounds. [R. 2]

II.  DISCUSSION

   A.   Timely Delivery of Incident Report.

Booth first alleges that his procedural due process rights were violated because the Incident Report incorrectly states that it was delivered to him on January 3, 2007, when in fact it was delivered to him the day after the incident on January 5, 2007. In support of his claim, Booth points to 28 C.F.R. § 541.15(a), which provides:

> Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.

This administrative rule is also set forth in BOP Program Statement 5270.07, Ch. 6, §1(a). This claim fails as a matter of law for several reasons.

First, Booth expressly acknowledges that, notwithstanding the incorrect date stated in the Incident Report, he actually received the Incident Report on January 5, 2007, and therefore Section 521.15(a) was followed in this case.

Second, even if this were not so, the rule requires BOP staff to provide the inmate with a

written copy of the charge "*ordinarily* within 24 hours" after the incident. The rule, by its terms, therefore permits prison staff to provide a written copy to the inmate more than 24 hours after the incident where circumstances warrant it, such as the prisoner's transfer to another cell block or institution, or other administrative delays which may routinely occur in the operation of a prison.

Finally, even were this not so, the requirements of procedural Due Process are defined by the United States Constitution, not by an agency's internal regulations or guidelines. *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Accordingly, an agency's failure to adhere to its own guidelines does not state a Due Process claim. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004). In the prison context, due process requires that before an inmate is subjected to discipline which increases the duration of his incarceration, he must be informed in writing of the charges against him at least 24 hours before any hearing; be allowed to present evidence in his own defense; be provided a written explanation of the finding and the evidence relied upon in reaching it; and be convicted upon some evidence in support of the charge. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). Therefore, even had the BOP failed to provide him with written notice of the charge within 24 *after the incident*, the Due Process Clause is satisfied so long as he receives written notice of the charge within 24 hours *before the hearing*. Because Booth's allegations do not indicate that this requirement was not satisfied, he has failed to state a due process claim.

B.  <u>Timely DHO Hearing</u>.

Booth next contends that his due process rights were violated because the DHO hearing was not held within 3 working days after the incident. Booth notes that the incident occurred on January 4, 2007, but the DHO hearing was not held until January 19, 2007. In support of his claim, Booth

4

points to 28 C.F.R. § 541.15(b), which provides:

> Each inmate so charged is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident. This three work day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holidays.

This requirement is also set forth in Program Statement 5270.07, Ch. 6, §1(b). As with Booth's first claim, this claim fails as a matter of law for several reasons.

As a threshold matter, this claim fails because Booth failed to exhaust it administratively within the BOP. Federal courts require prisoners wishing to file a habeas corpus petition under 28 U.S.C. § 2241 to exhaust their administrative remedies with respect to a claim before doing so. *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 689 (E.D. Ky. 2004); *Wesley v. Lamanna*, 27 Fed.Appx. 438, 2001 WL 1450759 (6th Cir. 2001). Booth did not assert this claim in his challenge to his DHO convictions before the BOP. Because proper exhaustion of administrative remedies requires the petitioner to follow the agencies critical procedural rules, *Woodford v. Ngo*, 126 S. Ct. 2378, 2387-88 (2006), Booth's failure to challenge the prison's compliance with Section 541.15(b) in his appeal to MARO renders this claim unexhausted.

Even had Booth exhausted this claim, it would fail as a matter of both fact and law. The section cited by Booth, Section 541.15(b), requires an initial hearing to be held within 3 days before the **UDC**, which is the Unit Disciplinary Committee ("UDC"), not the DHO. In this case, the incident occurred on January 4, 2007. Section 541.15(b) therefore required an initial hearing by the UDC within 3 work days, not including the day of the incident, weekends or holidays.[1] Accordingly,

---

[1] As with Section 541.15(a), Section 541.15(b) also indicates that an initial UDC hearing should **ordinarily** be held within 3 days, and therefore holding an initial hearing after that period does not necessarily indicate noncompliance with the regulation. Similarly, even had Booth demonstrated noncompliance with the time requirements of Section 541.15(b), because the

January 4, 2007 is not counted as the incident occurred that evening, and January 6 and 7, 2007 are not counted as they were weekend days. Therefore, counting January 5, 8, and 9 as countable work days, the UDC was required to hold an initial hearing on the charge or before January 9, 2007. The Incident Report reflects that the UDC held an initial hearing on January 9, 2007, in compliance with Section 541.15(b), and referred the matter to the DHO for further hearing with a proposed disposition and sanctions. [R. 2-2 at pg. 1]

A Code 108 charge is a "Greatest Category" Offense. Upon a finding of guilt, the hearing officer is required to impose the sanctions identified as A through G in the BOP guidelines. Because the UDC lacks the authority to impose such sanctions, a finding of guilt may only be made by a DHO. *See* Program Statement 5270.07, Ch. 4, pg. 5. The more formal procedures applicable to hearings before the DHO are separately set forth at 28 C.F.R. § 541.17 and Program Statement 5270.07, Ch. 7. Those regulations do not require the DHO hearing to be held within any defined period of time.

C. <u>Failure to Prove a Criminal Purpose</u>.

Booth finally contends that his conviction for violating Code 108 is not supported by "some evidence," as required by *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985), because the Incident Report did not allege nor the DHO conclude that he was using the cell phone for a criminal purpose. Booth points to the definition of the offense, which prohibits the:

> Possession, manufacture, or introduction of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade).

---

requirements of that section are not mandated by the Constitution, the BOP's failure to adhere to them fails to state a constitutional claim under the Due Process Clause. *Loudermill*, 470 U.S. at 541.

BOP Program Statement 5270.07, Ch. 4, pg. 5. This claim likewise must fail.

Booth first asserted this claim as a challenge to his DHO conviction in his appeal to the BOP's Central Office; he did not assert it in his original appeal to MARO. As previously noted, proper exhaustion of administrative remedies requires the petitioner to follow the agency's procedural rules, which in this case required him to assert this claim initially to MARO. Having failed to do so, this claim is unexhausted and therefore barred. *Ngo*, 126 S. Ct. at 2387-88.

This claim also must be rejected on the merits. Booth argues, in essence, that the offense requires a DHO to conclude not that the tool itself is objectively hazardous in the ways suggested by the regulation's parenthetical examples, but that he subjectively possessed a criminal intent or purpose for the tool. Contrary to Booth's reading of Code 108, the DHO's Report properly focused on the potentially-hazardous intrinsic nature of a cell phone, not on his subjective intent:

> The DHO considered that cellular telephones are considered sensitive equipment. Cellular telephones are a hazardous tool. The action on the part of any inmate to possess a hazardous tool, (cellular phone/charger) in any correctional institution seriously jeopardizes the security of the institution and poses a threat to the ability of staff to provide for the safety and security for staff, inmates and the general public as a whole. Possessing a cellular phone gives an inmate an opportunity to make completely unmonitored calls. These calls can contain threats to the general public or plans for an escape attempt or planning or participating in other illegal activity.

[R. 2-2]

Several courts have considered and rejected arguments identical to that asserted by Booth here. In *Ward v. Terrell*, 2008 WL 5273720 (D.Minn. 2008), a prisoner argued that, in order to satisfy the "some evidence" requirement of *Hill*, "the Government must show, in some way, that Petitioner's tattoo gun was intended for the purpose described in Code 108 and the D.H.O. decision." Rejecting that argument, the Court concluded that the BOP's interpretation of Code 108 - as prohibiting the possession of devices with the *potential* to be used in an escape, as a weapon, or

7

to be hazardous to security or personal safety - was reasonable. *Id.* at **8-9. The Third Circuit and several other district courts have reached the same result. *Robinson v. Warden*, 250 Fed.Appx. 462, 464 (3rd Cir. 2007) (the "BOP's definition of a hazardous tool to include a cell phone is not plainly erroneous or inconsistent with BOP regulations."); *Barnes v. Warden, FCI Texarkana*, 2008 WL 3481942, **3 (E.D.Tex. 2008) (rejecting prisoner's challenge to Code 108 violation for possession of a cell phone; the "some evidence" required under *Hill* is that the prisoner possessed a "tool" which the BOP could reasonably conclude was "most likely" to be used in an escape attempt, as a weapon, or as a threat to institutional security, not that the prisoner was using it to commit criminal conduct). For these reasons, Booth's Due Process claim must fail as a matter of law, and his petition will be denied.

### III. CONCLUSION

Accordingly, it is **ORDERED** that:

1. Booth's petition for a writ of habeas corpus [R. 2] is **DENIED.**

2. The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

This 4 day of June, 2009.

_____
Henry R. Wilhoit, Jr., Senior Judge